## MONTIFORD CROSS, Appellant, v. DETROIT BASE BALL CLUB et al., Respondents.

### St. Louis Court of Appeals, May 8, 1900.

1. **Contract, Construction of:** FINE AND SUSPENSION OF EMPLOYEES FOR DISRESPECT AND DISOBEDIENCE. While it is true that according to the general language contained in the contract of employment, the discretion is vested in the employer as manager or owner of a ball team to fine or suspend any of his employees, yet this language must be interpreted in a reasonable sense, as affording the right to fine or suspend for delinquencies on the part of the employees in the performance of their duties, or for disrespect or disobedience exhibited towards their employer while engaged in the discharge of the duties which they were hired to perform.

2. ———: ———: ———: PRIVATE QUARREL NO GROUND FOR SUSPENSION OR FINE UNDER THE CONTRACT. Such a contract affords no warrant for the imposition of a fine, or the suspension of service on account of a private quarrel between the employer and his employee, wholly disconnected with the rendition of service under the contract.

Appeal from the St. Louis City Circuit Court.—*Hon. Pembrook R. Flitcraft*, Judge.

REVERSED AND REMANDED.

*Wm. A. Kinnerk* for appellant.

(1) If Mr. Cross' wages were not paid on the fifteenth or the nineteenth of June, 1894, then he had a legal right to

quit defendant's employ, no matter what his motives in so doing might have been. Barr v. Cubbage, 52 Mo. 404; Buford v. Keokuk Northern Line Packet Co., 3 Mo. App. 159; Anderson v. Public Schools, 122 Mo. 61; Land and Gravel Co. v. Commission Co., 138 Mo. 439. If defendant suspended plaintiff for the balance of the season, on June 19, 1894, then by that fact the wages due Mr. Cross up to that time became payable, whether the club was at home or abroad. (2) Under the terms of the contract offered in evidence, defendant had no right to discharge plaintiff, or to fine him for alleged personal abuse or epithets applied to defendant not in the course of his employment. Defendant's only remedy was an action for slander. Jordan v. Webber Moulding Co., 72 Mo. App. 325. (3) The club was at home on Monday, January 18, and Tuesday, January 19, 1894, and therefore plaintiff's wages up to and including June 15, 1894, were payable on those days under the terms of the contract. (4) Where it is apparent from all the evidence that the trial court, sitting as a jury, has found for the wrong party and against all the evidence, an appellate court will not hesitate to reverse such a judgment and award a new trial. Meier v. The Proctor & Gamble Co., 81 Mo. App. 410.

*Fauntleroy, Howe & Fauntleroy* for respondent.

(1) As this case was submitted to the circuit court sitting as a jury, and said court found for respondent on the merits, the appellate court will not disturb the finding and judgment of the circuit court on the ground that such judgment was against the evidence, or the weight of the evidence. The appellate court, in such case, will assume the facts to be as found by the circuit court. No declarations of law were asked for by either party to the suit, and none were

given voluntarily by the court; hence there is nothing for the appellate court to pass upon. Hamilton v. Boggess, 63 Mo. 233; Miller v. Breneke, 83 Mo. 163; Rice v. Dudley, 34 Mo. App. 389; Taylor v. Penquite, 35 Mo. App. 403; Warren v. Maloney, 39 Mo. App. 297. (2) Appellant, by failing to demur to the evidence, impliedly admitted the existence of evidence tending to support the finding of the trial court. James v. Hicks, 76 Mo. App. 108. (3) Appellant having based his action solely upon his written contract with respondent, that contract alone can be looked to in order to determine the rights and obligations of the parties. Railroad v. Snyder, 28 Atl. Rep. 376. Appellant having declared upon the special written contract, can not abandon that contract and recover upon a *quantum meruit*. Clarke, Admx. v. Kane, 37 Mo. App. 258. (4) Appellant demanded his money when, by the very terms of his contract with respondent, it was not due, and then, when it was refused him, quitted his employment. The Detroit ball club was not at home when appellant demanded payment of his salary, and under the contract the same was only payable when the club was at home.

BOND, J.—The defendant engaged the service of plaintiff as a base ball player for the season (spring and fall of 1894) agreeing to pay therefor $150 per month semi-monthly, first and fifteenth of each month, unless the team with which plaintiff took service should be abroad, that is, playing games at other places than Detroit, which was termed its home. The evidence shows that the services of plaintiff were paid for up to the first of June, 1894. As to what was paid thereafter defendant testifies, that he paid $45.35 on account of subsequent salary, and on the nineteenth of June suspended plaintiff from further services during the season of 1894 for opprobrious language used by

plaintiff and for the same reason fined him $75, which latter sum added to the previous payments of $45.35, more than extinguished plaintiff's salary due for the nineteen days of June prior to his suspension. Plaintiff brought an action before a justice to recover his unpaid salary for nineteen days of June, and had judgment from which defendant appealed to the circuit court, where the cause was tried without a jury and without any declarations of law asked or given, and judgment rendered for defendant, from which plaintiff has appealed to this court, and assigns for error that the judgment under the conceded facts was for the wrong party, and that it should have been in his favor for the difference between the amount due for his services in June, nineteen days at $5 per day, or $95, and the sum of $45.35 paid for his account during that month, which would leave a balance in his favor of $49.65.

Unless there was something in the contract which war- ranted the fines imposed by defendant when he suspended plaintiff on the nineteenth of June, 1894, the point insisted upon is well taken. The testimony of defendant shows that the improper language then used was the result of a personal quarrel between the parties, growing out of the request of plaintiff to be released from his contract of service to defendant; that it had no connection or bearing whatever upon the performance by plaintiff of the duties which he had assumed under said contract, but was the result solely of personal anger aroused by a conversation between plaintiff and defendant. The language then used while highly reprehensible did not of itself justify the suspension of the plaintiff from the future performance of his duties as ball player. It is true that according to the general language contained in the contract of employment the discretion was vested in the defendant as manager or owner of the ball team to fine or suspend any of his employees, yet this lan-

guage must be interpreted in a reasonable sense as affording the right to fine or suspend for delinquencies on the part of the employées in the performance of their duties or disrespect or disobedience exhibited towards their employer while engaged in the discharge of the duties which they had been hired to perform. It afforded no warrant for the imposition of a fine or the suspension of service on account of a private quarrel between the employer and his employee wholly disconnected with the rendition of services under the contract. We, therefore, conclude that the fines imposed in this case could not be charged against the salary admitted to be due the plaintiff on the nineteenth of June, 1894. As the defendant also admits that he suspended plaintiff from further play or pay during the further existence of the contract for a cause which has never been shown to be insufficient, it follows that plaintiff was thereafter entitled to recover the balance due him upon his salary account on the day of his suspension, which balance, according to defendant's testimony, was $49.65. For this sum the learned circuit judge upon the evidence given for defendant should have rendered a judgment in favor of plaintiff. For his failure so to do the judgment herein is reversed and the cause remanded, with directions to the trial court to render judgment for that amount in favor of plaintiff. Judge *Bland* concurs; Judge *Biggs* absent.